to a lien. under 3 Rev. St. N. Y. c. 8, tit. 8, § 1, whether the builder obtained them in his character of owner or builder.]

[2. The statute provides (section 2) that the lien shall cease immediately after the vessel leaves the port at which the debt was created, unless the creditor shall, within 10 days after such departure. file specifications of his lien in the county clerk's office of the county in which the lien was created. *Held.* that the word "port," as employed in this and like statutes, is not used in any technical sense, such as port of entry. free port, etc., but in the familiar and popular sense, which covers any place along the shore where a vessel may need repairs or supplies.]

[3. Whenever the vessel departs from the county in which the lien was created and is required to be recorded, she "departs from the port," although she merely goes to a port of a neighboring county.]

In admiralty. This was a libel filed to recover the price of lumber furnished by the libelant to F. I. A. & L. H. Boole in July, 1856, and applied by them in building the steamboat at Mott Haven, in Westchester county. The steamboat was built under a contract between L. H. Boole and the claimants, the New York and Harlem Navigation Company. by which the hull and joiner work were to be completed before August 17, and to be delivered at a wharf in New York City. The hull of the boat was taken to New York August 22, and after receiving her machinery and making a trial trip or two she returned to Mott Haven, October 25, and on November 10 began her regular trips between Harlem and New York. On November 5 the builder was paid the contract price in full. The lumber was not sold to or for the vessel, and the charges on the libelant's books were to the firm alone, not naming the boat. This suit was commenced November 25, 1856. No specification of lien was filed in the county clerk's office of Westchester or New York.

[The lien was claimed under 3 Rev. St. N. Y. p. 493, tit. 8, c. 8. which provides as follows: "Section 1. Whenever a debt amounting to fifty dollars or upwards, shall be contracted by the master, owner, or his agent. builder or consignee of any ship or vessel within the state, for either of the following purposes: On account of any work done, or materials or articles furnished in this state, for or towards the building, repairing, fitting, furnishing or equipping such ship or vessel; * * * such debt shall be a lien upon such ship or vessel, her tackle, apparel and furniture; and shall be preferred to all other liens except mariner's wages."

["Sec. 2. When the ship or vessel shall depart from the port at which she was when the debt was contracted, such debt shall cease to be a lien at the expiration of 60 days after the return of such vessel to such port. and in all cases such lien shall cease immediately after such vessel shall have left such port, unless the person having such lien shall. within 10 days after such departure, cause to be drawn up specifications of his lien, the correctness of which is to be sworn to by such person, his agent, or his legal representatives, and filed in the county clerk's office of the county in which such lien shall be created."]

Beebe, Dean & Donohue, for libelant.
Benedict & McGowan, for claimant.

Before BETTS, District Judge.

HELD BY THE COURT: That a lien was indisputably created in favor of the libelant by the purchase made by the builder, if the materials were obtained on the credit of the vessel, whether he procured them in the character of owner or builder, subject to the condition expressed in the statute of filing a specification within ten days after leaving the port. That the term "port" used in this class of enactments has never been understood or employed in a technical or restricted sense, as limited to ports of entry, free ports, or those bearing any special qualification. These municipal lien laws especially are adapted to occasions which would naturally occur in places along the shores of our inland waters, wherever a vessel may need repairs or supplies, and the word "port" would naturally be used in its most familiar and popular sense. That the second section of the lien law of the state fixes the county within which the lien is created as the place where legal proof of it shall be recorded, and thus indicates unmistakably that when the vessel leaves such county, she departs from the port where the privilege accrued to her, and it is the same where her removal in point of distance is merely nominal, in going, for instance, into a port in the county of New York, as to one in Richmond or Suffolk county. That the libelant, not having filed his specification within ten days after the departure of the vessel from the port, his right of action was barred in this case.

Libel dismissed. with costs.

CONCORD. The (HOME INS. CO. v.). See Case No. 6,659.

## Case No. 3,091.

The CONCORDA.

[See Case No. 3,092.]

## Case No. 3,092.

The CONCORDIA.
PENT v. The CONCORDIA.
[5 Adm. Rec. 400.]
District Court, S. D. Florida. Dec. 17, 1855.

SALVAGE—COMPENSATION.

[1. Salvors, having no means of saving a cargo of cotton but by rafting, have no right to exclude others having vessels on the spot from participating in the salvage service.]

[2. The first salvors should be allowed 8 per cent. on the value of the cotton saved by the second set for saving it from fire by scuttling or cutting a hole in the side of the ship.]

[Cited in The Tolomeo, 7 Fed. 501.]